### UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

Carlton Johnson, *individually*                    Case No. 21-cv-01003 (KMM/JFD)
*and on behalf of all others similarly situated*,

Plaintiff,

v.                                                                              **ORDER**

Transport Corporation of America, Inc.,

Defendant.

## I.        INTRODUCTION

Currently before the Court is the parties Joint Motion for Approval of FLSA Settlement. [ECF No. 45.]  On March 10, 2021, the parties submitted a Joint Motion for Approval of Settlement.  [ECF No. 46.]  The Court denied the parties' motion without prejudice, requesting information regarding whether the attorneys' fees were separately negotiated, and if not, requesting further justification for the reasonableness of those fees.  [ECF No. 54.] On April 10, 2023, Plaintiff submitted a Supplemental Memorandum in Support of Joint Motion for Approval of FLSA Settlement. [ECF No. 55.] In addition, Plaintiff's Counsel submitted an affidavit that included a breakdown of the hours worked by various members of Plaintiff's Counsel's firm to determine the lodestar calculation.  [ECF No. 56.]

Based on a review of all those materials in this record, the Court hereby finds that approval of the settlement is appropriate. The motion is granted.

## II.       BACKGROUND

The Collective Members, including Plaintiff, are comprised of thirty-two individuals who currently or formerly performed worked under Independent Contractor Agreements with Defendant, Transport Corporation of America, Inc. Defendant TCA, is a Minnesota Corporation

1

and for-hire motor carrier authorized by the Federal Motor Carrier Safety Administration to provide trucking services across the United States. [ECF No. 47 at 2.] Pursuant to § 216(b) of the Fair Labor Standards Act, Plaintiffs initiated the collective action to recover unpaid minimum wages on behalf of all individuals from three years prior to the filing of the Collective Action Complaint, who worked under the Independent Contractor Agreement and performed that work using a truck under the Master Lease Agreement. [ECF No. 47 at 2.]  The Collective Members allege that since April 16, 2018, they performed work using trucks leased under a Master Lease Agreement with Minnwest Bank. Under the same agreement, Plaintiff Carlton Johnson agreed to provide equipment and professional truck driving services and leased a truck under a separate Master Lease Agreement with Minnwest Bank to perform services under his Independent Contractor Agreement. [ECF No. 47 at 2.]  The Collective Members allege that Defendant misclassified them as independent contractors and failed to pay them minimum wage as employees for the hours they worked. [ECF No. 47 at 11.]

In its defense, Defendant TCA denied these claims and argued that the Collective Members were properly classified as independent contractors and that they were compensated in sums above the minimum wage.  [ECF No. 47 at 3.]

### A. Settlement

Mr. Johnson brought this action on April 16, 2021.  On August 31, 2022, the parties participated in a settlement conference with Judge John F. Docherty. [ECF No. 47 at 4.] The parties reached a settlement shortly after the settlement conference.

The settlement agreement between the parties provides the following:

a. <u>Back Wage Payment.</u> Defendant TCA will pay in total $34,744.68 to Collective Members. [ECF No. 47 at 6.] The gross amount shall be distributed to Collective

2

Members[1] on a pro rata basis according to the respective proportion of weeks worked during the class period as detailed in Defendant's earnings report. [2] Defendant will also pay a service award in the amount of $5,000.00 to the named Plaintiff, Mr. Johnson. The payment will not reduce the amount of money paid to the settlement group. [ECF 47 at 7-8]. Defendant TCA will engage Atticus Administration to administer the settlement. The expenses associated with the services provided by Atticus are separate and apart from the settlement agreement and will be paid by Defendant. Additionally, under the agreement Defendant TCA will remit the Settlement Amount to Atticus with 28 days of the Settlement Effective Date. [ECF No. 47 at 5]. Further, within 7 days of receipt of the settlement amount, Atticus will distribute payment to collective members according to amounts stated in the agreement.

b.    <u>Release of Claims.</u> The named Plaintiff has executed a general release of claims against Defendant and all related entities. [ECF 47 at 7.] Relative to other collective members, the release is limited to claims of minimum wage compensation, liquidated damages, penalties, and interest arising from opt-in plaintiffs' alleged employment with Defendant under the FLSA that accrued before the settlement effective date. [ECF No. 47 at 7.]

c.    <u>Attorney Fees and Costs Payments.</u> A check in the gross amount of $23,355.32 for reimbursement of attorneys' fees and costs are to be paid directly by Defendant TCA to the law firm of Wanta Thome PLC. Alternatively, the Agreement provides that if the Court does not approve any portion of the attorney's fees, such funds shall revert to Defendant TCA.  [ECF No. 47 at 7.]

### A.  Legal Standard

The Eighth Circuit has yet to decide whether judicial approval is required for all FLSA settlements. *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019).  The parties here have requested the Court's approval of their settlement, so the Court will assume without deciding that its approval is required.  A district court reviewing a proposed settlement under FSLA may approve the settlement "after it determines that the litigation involves a bona fide dispute and that the proposed settlement is fair and equitable to all parties."  *Stainbrook v. Minn. Dep't of Pub. Safety*, 239 F. Supp. 3d 1123, 1126 (D. Minn. 2017).

---

[1] Settlement Amounts due to each Collective Member is detailed in Exhibit A attached to the parties' Joint Motion for Approval of Settlement.
[2] (Opt-In Pltf C.L. Wington is listed twice because for a portion of his relationship with TCA he operated as an individual owner-operator before transitioning to operating through a business entity. [Id. 6].

### B.  Bona Fide Dispute

A settlement reflects a bona fide dispute where it involves "a reasonable compromise over issues actually in dispute as employees may not waive their entitlement to minimum wage and overtime pay under the FLSA." *Netzel v. W. Shore Grp., Inc.*, No. 16-CV-2552 (RHK/LIB), 2017 WL 1906955, at *2 (D. Minn. May 8, 2017).  There should be a meaningful disagreement regarding the liability of the issues or the wages to be paid. *Id.*  Mr. Johnson, along with the Collective Members, contend that they were employed by Defendant and were on duty 24 hours a day while working and should recover 16 hours of wages for each day they were away from home. [ECF 47 at 14.] Defendant TCA disputes this theory and asserts that the Collective Members set their own work schedule and were bound by the FMCSA's Hours of Service Regulations, which limits drivers to working 14 hours a day followed by a mandatory minimum 10 hour off duty period either inside or outside of the sleeper. [ECF No. 47 at 14.]

Therefore, this settlement reflects compromise for a bona fide dispute between the parties regarding their independent contractor status.

### C.  Settlement Terms are Equitable and Fair

"To determine whether settlement terms are fair and equitable to all parties, a district court may consider a multitude of factors, including (1) the stage of the litigation and the amount of discovery exchanged, (2) the experience of counsel, (3) the probability of the plaintiff's success on the merits, (4) any overreaching by the employer in the settlement negotiations, and (5) whether the settlement is the product of arm's length negotiations between represented parties based on the merits of the case." *Stainbrook*, 239 F. Supp. 3d at 1126.

Regarding the first factor, settlements occurring before the commencement of formal discovery may be fair where the parties have exchanged sufficient information to evaluate their

claims. *Netzel*, 2017 WL 1906955, at *5 ("[T]he failure to engage in formal discovery is not fatal to a Court's approval of a FLSA settlement agreement").  The parties assert that they have exchanged substantial information throughout their settlement negotiations discussions.  Relative to the second factor, the Collective Members were represented by experienced counsel for the duration of the litigation and negotiations.  As to the third factor, the Collective Members contend that their claims are likely to be successful; however, success on the merits is never assured.  *Seow v. Miyabi Inc.*, No. 19-CV-2692 (JNE/DTS), 2021 WL 3616894, at *2 (D. Minn. July 15, 2021) ("[A] settlement agreement avoids delay and uncertainty.").  For the fourth and fifth factors, the parties assert that the settlement was reached through arm's length negotiations. Additionally, the Court finds no evidence of overreaching by Defendant TCA.

The Court also finds that the settlement payment, in the amount of $36,744.68, that is to be distributed among the Collective Members on a pro rata basis, is fair and reasonable. Excluding attorneys' fees, the Collective Members will receive payment relative to their employment during the class period as stated in Defendant's earnings report. [ECF No. 47 at 6.] Given that Mr. Johnson or the Collective Members were in no way guaranteed to prevail on any of their claims had the matter not settled, nor were they guaranteed to receive one hundred percent of the back pay and damages requested, the Court finds that this settlement is a reasonable compromise between parties.

### D.  Attorneys' Fees

Generally, FLSA settlements do not require judicial approval of attorneys' fees and costs, so long as "the attorney fees were in fact negotiated separately and without regard to the plaintiff's FLSA claim" and where "there was no conflict of interest between the attorney and his or her client." *Barbee*, 927 F.3d at 1027, n.1.  However, where those fees were not separately

negotiated, the Court must review them for reasonableness by comparing the settlement fees to fees calculated by the lodestar method, which multiplies the number of hours worked by a reasonable hourly rate.  *Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021).

The attorneys' fees here were not negotiated separately and are therefore subject to review. Mr. Wanta's affidavit provides a detailed breakdown of his firm's lodestar by attorney which amounted to $73,037.00. Mr. Wanta spent approximately 34.3 hours litigating this case, along with other members of his firm, who spent more than 80 hours aiding in litigating this case, collectively. Based on his extensive experience with class action and mass tort litigation, Mr. Wanta charges $750 per hour. The settlement awards Mr. Wanta $23,255.32 for attorney's fees, in addition to $1,610 for expenses accrued during litigation. The settlement award is substantially less than the lodestar amount and accounts for one third of the settlement value. Based on the calculations of the original lodestar amount of  $73,037.00, Mr. Johnson's attorney has therefore taken a 68.2 % reduction in fees in this settlement, which the Court finds to be reasonable. *Seow*, 2021 WL 3616894, at *2 (approving settlement fees that were 62% lower than the lodestar calculation).

Given that the settlement fees and costs are significantly lower than the calculated lodestar, the Court finds that the fees and costs are reasonable.

## III.    CONCLUSION

Accordingly, the parties have established that the settlement agreement is fair and equitable to all parties.  **IT IS HEREBY ORDERED THAT:**

1. The parties' motion for approval of settlement, (ECF No. 45), is **GRANTED.**

2. The matter is **DISMISSED WITH PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: July 14, 2023                                    *s/Katherine Menendez*
                                                       Katherine Menendez
                                                       United States District Judge